A10A2130. IN THE INTEREST OF H. A., a child.

(706 SE2d 615)

PHIPPS, Presiding Judge.

Sixteen-year-old H. A. was adjudicated delinquent for acts that, if committed by an adult, would constitute burglary. He appeals his adjudication, asserting that the juvenile court erred when, during the hearing on H. A.'s motion to suppress, the court refused to allow a testifying police officer to refresh his recollection with an audio-recording of a police dispatch report. Because H. A. shows no ground for reversal, we affirm.

The evidence showed that late in the afternoon on July 4, 2009, a man (the "first resident") saw an unfamiliar light blue or turquoise Nissan Quest minivan pull into his driveway. The vehicle occupants appeared surprised to see the man, and after stating that they were looking for someone who did not live at that residence, they quickly left. The man found their behavior suspicious, and he called 911 to report the incident, providing a description of the vehicle and its tag number. A "be on the lookout" (BOLO) dispatch was issued, which described the vehicle and included its tag number.

Also that afternoon, another person who lived in the same area (the "second resident") arrived at his house to see an unfamiliar vehicle backed into his driveway with its motor running. He saw someone run to the vehicle and quickly drive away. He saw another person run out of his house, across his yard, and up the street. He found the door to his house kicked open and a television set missing. He called 911 to report the incident and shortly thereafter spoke with a police officer at the scene. The man described the vehicle he had seen as blue or grey and said he thought it was a truck, possibly a Dodge brand. BOLO dispatches were issued.

A police officer who was on patrol the day of the burglary testified to hearing a series of BOLO dispatches for a Nissan Quest minivan; at least one of the dispatches gave a tag number and vehicle color.[1] That evening, he and his partner spotted, parked at a gas station, a minivan with a tag number matching the BOLO dispatch. One of the officers contacted the dispatcher and confirmed that the tag number matched.

The officers followed the minivan a short distance before initiating an investigative traffic stop. When they approached the minivan they detected the odor of marijuana; they called a K-9 unit to the scene, and after the dog alerted to the minivan, they searched it. H. A. was a passenger in the minivan, and property later determined

---

[1] The officer first testified that the BOLO dispatch described a green minivan; he later testified that it described a blue minivan.

to belong to the second resident was found both inside the vehicle and on H. A.'s person.

At the adjudicatory hearing, the first resident identified H. A. as one of the persons he had seen in his driveway. The second resident testified that H. A. appeared to be of the same ethnicity as the person who ran out of his house, but he could not identify H. A. because the person who came out of his house "ran so fast and was covered up[,] I couldn't really tell." Someone driving on the second resident's street the afternoon of the burglary testified to seeing two people in an aqua or light green American-model van back into a driveway and then pull out and drive away very quickly, nearly resulting in a collision.

H. A. moved to suppress the evidence found as a result of the stop and his subsequent detention, on the ground that there was no basis for the stop. To that end, he sought to show that the minivan stopped by the officers did not match the BOLO description of the vehicle connected with the burglary of the second resident's house. During the suppression hearing, one of the officers testified that he had stopped the minivan because it matched the description given in the BOLO dispatches. The other officer testified that one of the BOLO dispatches described the vehicle, but he could not recall whether a later dispatch also contained a description. The following exchange then occurred:

> [Defense counsel]: Are you aware that the radio traffic in your vehicle is recorded?
>
> [Officer]: That's correct.
>
> [Defense counsel]: Okay and if you were to listen to the radio traffic in your vehicle would it refresh your recollection about what you heard that evening?
>
> [Officer]: Maybe.
>
> [Defense counsel]: Your Honor I ask that this witness be allowed to refresh his recollection of that radio traffic.

The state objected to this request and the court sustained the objection.

1. H. A. contends that the court erred in refusing to permit the officer to refresh his recollection from the audio-recording of the dispatches. The Supreme Court of Georgia has held that, "[a]s long as the witness is willing to swear from his memory as refreshed, his memory may be refreshed by any kind of stimulus."[2] The officer

---

[2] *Green v. State*, 242 Ga. 261, 265 (5) (249 SE2d 1) (1978) (citation and punctuation omitted), rev'd on other grounds, *Green v. Georgia*, 442 U. S. 95, 97 (99 SC 2150, 60 LE2d 738) (1979).

testified that he was present when the later BOLO dispatch was received but could not recall whether that dispatch contained a vehicle description; he further stated that a recording of that dispatch might refresh his recollection on the issue. Under these circumstances, the court's refusal to permit the officer to refresh his recollection was error.[3]

2. Nevertheless, we find that the error was harmless and thus does not warrant reversal of H. A.'s adjudication. An error is harmless when it is highly probable that the error did not contribute to the verdict.[4] In this case, there was evidence that the officers received at least one BOLO dispatch on July 4, 2009 matching the description of the minivan they stopped that day, which provided them with articulable suspicion to warrant their investigative stop of the vehicle.[5] And there was evidence that, upon stopping that vehicle, the officers detected the odor of marijuana and a drug dog alerted to the vehicle; these circumstances provided probable cause for their warrantless search of the vehicle.[6] That other BOLO dispatches may have contained different information did not render illegal the stop or subsequent search. Consequently, the court's refusal in the suppression hearing to allow the officer to refresh his recollection about the contents of one of the later BOLO dispatches did not contribute either to the court's decision on the suppression motion or to the court's adjudication of H. A. as delinquent.[7]

*Judgment affirmed. Miller, P. J., and McFadden, J., concur.*

DECIDED FEBRUARY 28, 2011.

*Stephen M. Reba*, for appellant.

---

[3] See *Woods v. State*, 269 Ga. 60, 62-63 (3) (495 SE2d 282) (1998) (court's refusal to allow witness to refresh recollection was error); *Green v. State*, supra (discussing holding in *Smith v. Morning News*, 99 Ga. App. 547, 548-549 (1) (109 SE2d 639) (1959) that court erred in refusing to allow witness to refresh his recollection with x-ray photographs). Compare *Gibson v. State*, 150 Ga. App. 718 (4) (258 SE2d 537) (1979) (court did not err in refusing to allow witness to refresh recollection with audio-recording, where witness did not state that playing of recording would have helped to refresh her recollection).

[4] *Lindsey v. State*, 282 Ga. 447, 450 (2) (651 SE2d 66) (2007).

[5] See *Harper v. State*, 300 Ga. App. 757, 761 (1) (a) (686 SE2d 375) (2009).

[6] See *Somesso v. State*, 288 Ga. App. 291, 293 (2) (a) (653 SE2d 855) (2007).

[7] See *O'Neal v. State*, 288 Ga. 219, 223 (2) (702 SE2d 288) (2010) (affirming conviction despite court's error in failing to give curative instruction after prosecutor made improper closing argument, because it was highly probable that the error did not contribute to the verdict in light of the strength of the evidence in the case); see also *Woods*, supra at 63 (3) (holding court's refusal to allow witness to refresh recollection to be harmless error where appellant's goal was to use refreshed recollection to impermissibly impeach another witness with a document not prepared by that witness).

*Gwendolyn Keyes Fleming, District Attorney, Robert H. Wilson, Assistant District Attorney*, for appellee.